## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, and JAMES S. )
JORGENSEN, Administrator of the Funds, )
                                       )
                **Plaintiffs,** )
   **v.** )
                                       )
BENSON CONSTRUCTION COMPANY, an )
Illinois corporation, and )
MARK W. BERGLUND , individually, )
                                       )
              **Defendants.** )

**Case No.** FILED: APRIL 15, 2008
08CV2136                    TG
JUDGE ST. EVE
MAGISTRATE JUDGE VALDEZ

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare

Department of the Construction and General Laborers' District Council of Chicago and Vicinity

(collectively "Funds") and James S. Jorgensen (hereinafter "Jorgensen"), Administrator of the

Funds, by their attorneys, Patrick T. Wallace, Jerrod Olszewski, Christina Krivanek, Amy

Carollo, and Charles Ingrassia, for their Complaint against Defendants Benson Construction

Company and Mark W. Berglund, individually, state:

## COUNT I

### (Failure To Pay Employee Benefit Contributions)

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and Federal Common Law.

2.     Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.     The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A).  They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5).  The Funds have offices and conduct business within this District.

4.     Plaintiff James S. Jorgensen ("Jorgensen") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union").  With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.     Defendant Benson Construction Company (hereinafter "Benson" or the "Company") is an Illinois corporation.  The Company does business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.     Defendant Mark W. Berglund ("Berglund") is and was at all times relevant herein a shareholder and officer of Benson.

7.     The Union is a labor organization within the meaning of 29 U.S.C. §185(a).  The Union and Concrete Contractors Association of Greater Chicago ("CCA") have been parties to various area-wide collective bargaining agreements, the most recent of which has been in effect since June 1, 2006 ("Agreement").  The CCA is comprised of various member contractors.  The contractors who are members of the CCA are by virtue thereof bound to the terms of the Agreement between the Union and the CCA as well as the Funds' respective Agreements and Declarations of Trust.  The Company is a member of the CCA and, as a result, is bound to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust.  A true and accurate copy of the CCA's Membership list as of March 27, 2002, is attached hereto as Exhibit A.

8.     The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors' Association of Greater Chicago ("CCA"), the GDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LCDMC"), the CARCO Industry Advancement Fund ("CARCO"), and the Illinois Small Pavers Association ("ISPA") to act as an agent in the collection of contributions due to those funds.

9.     The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee.  Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed up to 20 percent liquidated damages plus interest.

10.     The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

11.     The Agreement obligates the Company to obtain and maintain a surety bond to insure future wages, pension and welfare contributions.

12.     Benson entered into an Installment Note ("Note") with the Funds on or about March 10, 2008 to submit payment of amounts due and owing pursuant to an audit conducted of the Company's books and records for the period of May 1, 2005 through October 31, 2007.  A true and accurate copy of the Note is attached hereto as Exhibit B.

13.     Notwithstanding the obligations imposed by the Agreement, the Funds' respective Agreements and Declarations of Trust, and the Note, as shown in a true and accurate copy of the audit conducted on the Company for the period of May 1, 2005 through October 31, 2007 attached hereto as Exhibit C, the Company has:

a.     failed to pay contributions to Plaintiff Laborers' Welfare Fund of the Health and

4

Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the audit period of May 1, 2005 through October 31, 2007 in the amount of $11,695.00, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries; and

        b.      failed to pay contributions to Plaintiff Laborers' Pension Fund for the audit period of May 1, 2005 through October 31, 2007 in the amount of $8,304.90, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries.

        14.      Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company owes $3,052.53 in liquidated damages to the Welfare Fund and $2,171.44 in liquidated damages to the Pension Fund for the audit period of May 1, 2005 through October 31, 2007.

        15.      Pursuant to the terms of the Agreements and the Funds' respective Agreements and Declarations of Trust, the Company is liable for the costs of any audit revealing delinquencies to the Funds. Accordingly, the Company is liable for audit costs in the amount of $965.00, for the audit covering the period of May 1, 2005 through October 31, 2007.

        16.      The Company's actions in failing to submit payment upon an audit to which it submitted its books and records violate Section 515 of ERISA, 29 U.S.C. §1145.

        17.      Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, the terms of the Agreement and the Funds' respective Trust Agreements, Federal Common Law, and the Note, the Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, audit costs, reasonable

5

attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Benson Construction Company:

a.    entering judgment in sum certain against the Defendant Company on the amounts due and owing pursuant to the audit including contributions, interest, liquidated damages, audit costs, and attorneys' fees and costs; and

b.    awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Default on Installment Note)

18.    Plaintiffs reallege paragraphs 1-17 of Count I.

19.    Defendant Berglund signed a Guaranty of Payment and Indemnification ("Guaranty") on or about March 10, 2008 individually guaranteeing payment of the amounts due under the Note to the Funds.  A true and accurate copy of the Guaranty is attached hereto as Exhibit D.

20.    Paragraph 8 of the Note provides that

Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Fund's respective Agreements and Declarations of Trust.  If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Fund's respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages.  Further, in the event the Company fails to timely make any payments described in this Note. All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note.  In

6

such event the Company further agrees to pay all attorney fees and costs incurred by the Funds in any action to enforce any part or all of this note.

See Exhibit B.

21.    Paragraph 1 of the Guaranty provides that

. . . The Guarantor also agrees to be personally liable for all monthly benefit contributions and/or union dues owed from the Company to the Funds, the District Council and all ancillary funds that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

22.    Paragraph 13 of the Guaranty provides that

The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement [sic] against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees.

23.    The Company failed to timely submit its March and April 2008 payments

pursuant to the Note and is in default on the Note.

24.    Pursuant to the terms of the Guaranty, Defendant Berglund is liable to the Funds

for all amounts due on the defaulted Note, including all outstanding liability on the audit of the

Company's books and records conducted for the period of May 1, 2005 through October 31,

2007.

25.    Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of

the LMRA, 29 U.S.C. §185, Federal Common Law, the terms of the Agreement and the Funds'

respective Trust Agreements, the terms of the Note and the Guaranty, the Company and Berglund

are liable to the Funds for the full amount remaining due on the Note plus interest and liquidated

damages for all late payments and the attorneys' fees and costs incurred by the Funds in bringing this action.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendants Benson Construction Company and Mark W. Berglund, joint and severally, as follows:

a.      entering judgment against Defendants for the full amount remaining due on the defaulted Note, plus interest and liquidated damages, and the attorneys' fees and costs incurred by the Funds; and

b.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

April 15, 2008

Laborers' Pension Fund, et al.

By: _Christina Krivanek_

Christina Krivanek

Patrick T. Wallace
Jerrod Olszewski
Christina Krivanek
Amy N. Carollo
Charles Ingrassia
Laborers' Pension and Welfare Funds
Sub Office, 111 W. Jackson Blvd.
Suite 1415
Chicago, IL  60604
(312) 692-1540

## Concrete Contractors Assoc.
## Membership List
March 27, 2002

| Customer | Contact | Phone | Fax | Customer Type |
|---|---|---|---|---|
| C-A Cement Construction, Inc. | Anna Copsolino | 630-582-4383 | 630-582-0975 | Contractor |
| Accurate Construction Inc. | Syed Hussainni | 847-328-9500 | 847-328-8505 | Contractor |
| Adjustable Forms, Inc. | James Lincquist | 630-953-8788 | | Contractor |
| Baja Concrete Construction | Al Jeines | 630-257-1140 | 630-257-1167 | Contractor |
| Baumgartner Construction, Inc. | Rich Baumgartner | 830-420-0474 | 830-420-0621 | Contractor |
| Benson Construction, Inc. | Bill Berglund | 847-256-9860 | 847-256-9881 | Contractor |
| Builders Concrete Co. | Mary Fitzpatrick | 630-861-0789 | 630-820-1810 | Contractor |
| Capital Cement | David Skonin | 773-283-3900 | 773-283-3777 | Contractor |
| Carlson Brothers Builders | Glen Carlson | 773-237-2289 | 773-237-2269 | Contractor |
| Cellorete Decks | Jerry Jones | 630-281-2168 | 630-231-2184 | Contractor |
| Cerami Construction Co., Ltd. | Sal Cerami | 708-343-8500 | 708-343-8510 | Contractor |
| Cidalla Concrete, Inc. | Vince Colella | 630-628-0991 | 630-628-0478 | Contractor |
| Concrete By Sennstrom, Inc. | Sennstrom | 630-406-1200 | | Contractor |
| Danior Construction Co. | Joan O'Gorman | 815-485-7075 | 630-406-0908 | Contractor |
| DeGraf Concrete Construction | Mike Pitman | 847-541-2140 | | Contractor |
| Eagle Concrete, Inc. | Mike Martin | 630-879-2080 | 847-382-1829 | Contractor |
| Elliott Construction Co. | Rob Elliott | 630-469-1823 | 630-879-2025 | Contractor |
| Engineered Constructors, Inc. | Thomas J. Ferrariella | 219-931-8700 | 630-469-1957 | Contractor |
| Engstrom Corp. | Robert Engstrom | 630-837-3377 | 219-931-8787 | Contractor |
| Envion, L.L.C. | Loretta Young | 773-436-6050 | 630-837-3409 | Contractor |
| Executive Installations | Gary Skimi | 847-382-2260 | 773-436-5483 | Contractor |
| F.H. Lattwesdo Co., Inc. | Fred Lattweber | 708-424-7000 | 847-382-2260 | Contractor |
| Gotweld Construction Co | Wayne Gotweld | 708-391-4820 | 708-424-9814 | Contractor |
| Greyhawk Construction Co., Inc. | Mike Popp | 847-296-3737 | | Contractor |
| Great Lakes Group | Sandra Haynek | 847-296-3737 | 847-680-5963 | Contractor |
| Groen Concrete, Inc. | Bruce Groen | 708-874-9428 | 847-296-1928 | Contractor |
| H. Borre & Sons | Emil Borre, Jr. | 773-775-3000 | 708-874-9435 | Contractor |
| Harry W. Kuhn, Inc. | Woodie Griffin | 630-283-1188 | 773-775-3004 | Contractor |
| Howard Concrete | Brian Howard | 630-942-1800 | 630-283-1179 | Contractor |
| I9 In One Contractors | Oliver Filer | 773-847-2100 | 630-942-1824 | Contractor |
| K. Keup Construction, Inc. | Kevin Keup | 630-879-6900 | 773-847-4601 | Contractor |
| Kustom Construction | Al Kus | 830-627-0342 | 630-879-6533 | Contractor |
| Lake Gimer Construction | Jennifer | 847-525-2722 | 830-627-0342 | Contractor |
| Lively Construction Co. | Lynn Lively | 847-840-0200 | 847-525-3462 | Contractor |
| Lundsberg Corporation | Gary Lundsberg | 773-478-1810 | 847-489-1465 | Contractor |
| M.V. Masonry | Michael Volpentesta | 708-371-5655 | 773-478-2373 | Contractor |
| Malibu Construction, Inc. | Jim Rossi | 630-904-2228 | 708-371-6845 | Contractor |
| Marusco General Cont. | Charles Marusco | 847-873-0800 | 630-904-8728 | Contractor |
| | | | 847-873-0800 | Contractor |

EXHIBIT

A

# FINANCIAL SCHEDULE FOR INSTALLMENT NOTE

CODE  10387   CONTRACTOR  BENSON CONSTRUCTION CO.

ASSUMPTIONS :
1.) INTEREST RATE          8.50%         3128 N. SCHOENBECK RD.
    (CURRENT PRIME 6.50 PLUS 2.0)        ARLINGTON HEIGHTS,IL. 60004
2.) NUMBER OF PAYMENTS       6           PHONE 847-541-9880
3.) BEGINNING OF PERIOD PAYMENTS
4.) NO INTEREST ON ATTORNEY FEES AND AUDIT COSTS

| MONTH | WELFARE | PENSION | DUES | LDCLMCC | CCA | TRAINING FUND | LECET |
|---|---|---|---|---|---|---|---|
| AUDIT 5/1/05-10/31/07 | 7,818.76 | 5,532.14 | 898.58 | 118.80 | 69.30 | 214.99 | |
| | | | | | | | |
| REPORTS | | | | | | | |
| Nov-07 | 4,909.52 | 3,498.88 | | | | 135.52 | |
| Dec-07 | 2,681.91 | 1,911.32 | | | | 74.03 | |
| | | | | | | | |
| SUB-TOTAL CONTRIBUTIONS | 15,410.19 | 10,942.34 | 898.58 | 118.80 | 69.30 | 424.54 | 59.40 |
| | | | | | | | |
| 10% PENALTIES | 29.51 | 17.02 | 89.86 | 11.88 | 6.93 | 0.73 | 5.94 |
| 20% PENALTIES | 3,023.02 | 2,154.42 | | | | 83.46 | |
| | | | | | | | |
| ACCUMULATED PENALTIES | | | | | | | |
| | | | | | | | |
| ACCUM. INTEREST - ABOVE REPORTS | 13.72 | 9.78 | | | | | |
| ACCUM. INTEREST - ABOVE AUDIT | 99.93 | 63.72 | | 1.61 | 0.96 | 2.58 | 0.79 |
| | | | | | | | |
| TOTAL BEFORE ATTY & AUDIT COSTS | 18,576.37 | 13,187.28 | 988.44 | 132.29 | 77.19 | 511.31 | 66.13 |
| | | | | | | | |
| LESS 20% DOWN PAYMENT | 3,715.27 | 2,637.46 | | | | | |
| | | | | | | | |
| AMOUNT FINANCED | 14,861.10 | 10,549.82 | | | | | |
| | | | | | | | |
| ATTORNEY FEES AND COSTS | - | - | | | | | |
| | | | | | | | |
| AUDIT COSTS | 482.50 | 482.50 | | | | | |

|  | WEL | ATTY | AUDIT |
|---|---|---|---|
| MONTHLY PAYMENT | 2,520.76 | - | 80.42 |
|  | PENS | ATTY | AUDIT |
| NUMBER OF PAYMENTS | 1,789.48 | - | 80.41 |

| | WELFARE | PENSION |
|---|---|---|
| MONTHLY PAYMENT | 2,601.18 | 1,869.89 |
| NUMBER OF PAYMENTS | 6 | 6 |
| TOTAL PAID  (X6) | 15,607.08 | 11,219.34 |
| LESS AMOUNT FINANCED | 14,861.10 | 10,549.82 |
| LESS ATTORNEY FEES AND COSTS | - | - |
| LESS AUDIT COSTS | 482.50 | 482.50 |
| EQUALS NOTE INTEREST | 263.48 | 187.02 |
| PLUS ACCUMULATED INTEREST | 113.65 | 73.50 |
| EQUALS TOTAL INTEREST | 377.13 | 260.52 |

SUMMARY TOTALS

| | |
|---|---|
| WEL | 15,410.19 |
| PEN | 10,942.34 |
| DUES | 898.58 |
| LDCMC | 118.80 |
| CCA | 69.30 |
| TRAIN | 424.54 |
| LECET | 59.40 |
| CISCO | - |
| CAICA | - |
| SUBTOT | 27,923.15 |
| LATE FEES | 5,422.77 |
| INT | 643.59 |
| ATTY | - |
| AUDIT | 965.00 |
| TOTAL | 34,954.51 |

GUARANTY AMOUNT          34,954.51


EXHIBIT
B
tables'

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with Local DC the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues;

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the audit period of May 1, 2005 thru October 31, 2007 and reports November 2007 thru December 2007.

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the audit period of May 1, 2006 thru October 31, 2007.

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $19,322.35 to the Health and Welfare Fund (comprised of $15,410.19 in delinquent contributions, $3,052.53 in liquidated damages, $482.50 in audit costs and $377.13 in interest) (based on an interest rate of 8.50%). The Company will also pay $13,856.96 to the Pension Fund (comprised of $10,942.34 in delinquent contributions, $2,171.44 in liquidated damages, $482.50 in audit costs and $260.52 in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 4 and 5.

2. The Company will also pay $511.31 to the Training Fund (comprised of $424.64 in delinquent contributions, $84.19 in liquidated damages and $2.58 in interest), $77.19 to the CCA Fund (comprised of $69.30 in delinquent contributions, $6.93 in liquidated damages and $.96 in interest), $66.13 to the LECET Fund (comprised of $59.40 in delinquent contributions, $5.94 in liquidated damages and $.79 in interest), $132.29 to the LDCMC Fund (comprised of $118.90 in delinquent contributions, $11.88 in liquidated damages and $1.61 in interest) and $988.44 in union dues (comprised of $898.58 in delinquent contributions and $89.86 in liquidated damages). These delinquent amounts shall be paid in their entirety at the time payment under this Note commences, in accordance with the schedule described in paragraph 4.

3. The company will also pay the Funds the sum of $965.00 in audit costs. This amount split equally between Welfare and Pension as described in paragraph 1 above.

4. Simultaneously with the execution of this Note, the Company will pay twenty percent (20%) of the total outstanding indebtedness, excluding note interest and the delinquent amounts described above in paragraph 2, or $3,715.27 to the Health and Welfare Fund and $2,637.46 to the Pension Fund.

5. For six (6) consecutive months commencing on March 1, 2008 and ending on August 1, 2008, the Company will pay $2,601.18 per month to the Health and Welfare Fund and $1,869.89 per month to the Pension Fund.

6. The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

7. The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.

the CBA and the Fund's respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contributions shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Fund's respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note. All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorney fees and costs incurred by the Funds in any action to enforce any part or all of this note.

9. This Installment Note is conditioned on the Company's staying current on its obligations to the Funds under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution reports and to make timely contribution payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

10. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

11. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the _10th_ day of the _March_ 2008.

Benson Construction

By: _Mhh W Byl_

Title: _President_

Laborers' Pension Fund

By:_____

Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.

By:_____

# Levinson Simon & Sprung, P.C.
## Certified Public Accountants

November 29, 2007

566 W. Lake St.
Suite 3 West
Chicago, IL 60661-1414
(312) 655-0037
Fax (312) 655-9145

Trustees Laborers' Pension Fund and
Health and Welfare Department of the
Construction and General Laborers'
District Council of Chicago and Vicinity
Jean Mashos, Director
11465 Cermak Road
Westchester, Illinois 60154

Re:     Benson Construction Co.
        Case # CHLAB-1007-1519
        Acct # 10387

Gentlemen:

In accordance with your instructions we have performed certain agreed upon procedures to the payroll records presented for our inspection by the above mentioned employer. The purpose of the inspection was to determine the accuracy of the employer's monthly contributions to the Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period May 1, 2005 through October 31, 2007. This agreed upon procedure engagement was performed in accordance with the standards established by the American Institute of Certified Public Accountants. The sufficiency of these procedures is solely the responsibility of the Laborers' Pension Fund and Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.

Attached hereto are yearly schedules showing the detail of the under-reported hours and computation of the amounts due to the Funds. The findings consist of unreported and under-reported wages and hours of individuals on payroll doing covered work that have been previously reported to the Funds. The contractor is delinquent for October 2007. *Separate schedules and summaries have been prepared according to the funds due.*

Our examinations indicated that the employer owes the following amounts for the period audited, exclusive of interest.

|          |          | Amount Due |
|----------|----------|-----------:|
| Welfare  |          | $  7,818.76 |
| Pension  |          | 5,532.14 |
| Training |          | 214.99 |
| IAF      |          | 69.30 |
| LDCLMCC  |          | 118.80 |
| LECET    |          | 59.40 |
| Dues     |          | 898.58 |
|          | Total    | $ 14,711.97 |



EXHIBIT
C

Trustees Laborers' Pension Fund and
Health and Welfare Department of the
Construction and General Laborers'
District Council of Chicago and Vicinity
November 29, 2007
Page Two
Case # CHLAB-1007-1519

We were not engaged to, and did not, perform an examination, the objective of which would be the expression of an opinion on the accompanying report. Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you.

We shall be pleased to furnish any additional information desired and have attached our bill for services.

Very truly yours,

LEVINSON SIMON & SPRUNG P.C.
Howard B. Levinson, CPA, MBA

HBL/lab

Enclosures

cc:    Denise Ayala

Levinson Simon & Sprung, P.C.
Reconciliation of Differences Per Year

Page 1

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
BENSON CONSTRUCTION CO.
Case #: ChLab-1007-1519
Audit Period: 5/1/2005 thru 10/31/2007
Fiscal Year End: May

| Fiscal Year Ending | | |
|---|---|---|

## ALL FUNDS

| | MAY 2008 | MAY 2007 | MAY 2006 | MAY 2005 | Total |
|---|---|---|---|---|---|
| Dollars Not Reported | 31,632.80 | 392.49 | 912.04 | 20.00 | 33,157.33 |
| Hours Not Reported | 944.00 | 2.00 | 39.00 | 2.00 | 987.00 |
| **Dollar Amount Due** | | | | | |
| Welfare Fund | 7,523.68 | 14.92 | 267.54 | 12.62 | 7,818.76 |
| Pension Fund | 5,361.92 | 9.66 | 153.68 | 6.88 | 5,532.14 |
| Training Fund | 207.66 | 0.34 | 6.63 | 0.34 | 214.99 |
| IAF | 66.08 | 0.14 | 2.73 | 0.14 | 69.09 |
| LDCLMCC | 113.28 | 0.24 | 4.68 | 0.24 | 118.44 |
| LECET | 56.64 | 0.12 | 2.34 | 0.12 | 59.22 |
| Dues | 875.40 | 6.87 | 15.96 | 0.35 | 898.58 |
| **Total** | **14,204.68** | **32.31** | **453.54** | **20.69** | **14,711.22** |

| | Audit Fee | 965.00 |
|---|---|---|

| | Total Amount Due | 15,676.22 |
|---|---|---|

Manager: Betar, Lela
Auditor: Uczen, Suzanne

Levinson Simon & Sprung, P.C.
Detail Report
Report Date: 11/29/2007

Page 2
Employees

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
BENSON CONSTRUCTION CO.
Case #: ChLab-1007-1519
Contract: CCA & *CCA

Year Ended: May, 2005

Contributions computed by Amount per Hour

| SSN | Name | JUN 2004 | JUL 2004 | AUG 2004 | SEP 2004 | OCT 2004 | NOV 2004 | DEC 2004 | JAN 2005 | FEB 2005 | MAR 2005 | APR 2005 | MAY 2005 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | TORRES, FILIMON | | | | | | | | | | | | | |
| | Total Hours | | | | | | | | | | | | 2.00 | 2.00 |

| Rate Table | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare Fund | $6.3100 | | | | | | | | | | | | 12.62 | 12.62 |
| Pension Fund | $3.4400 | | | | | | | | | | | | 6.88 | 6.88 |
| Training Fund | $0.1700 | | | | | | | | | | | | .34 | .34 |
| IAF | $0.0700 | | | | | | | | | | | | .14 | .14 |
| LDCLMCC | $0.1200 | | | | | | | | | | | | .24 | .24 |
| LECET | $0.0600 | | | | | | | | | | | | .12 | .12 |
| Total | | | | | | | | | | | | | 20.34 | 20.34 |

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
BENSON CONSTRUCTION CO.
Case #: ChLab-1007-1519
Contract: CCA & *CCA

Year Ended: May, 2005

**Levinson Simon & Sprung, P.C.**
Detail Report
Report Date: 11/29/2007

Page 3
Employees

Contributions computed as Percentage of Dollars Paid

| SSN | Name | JUN 2004 | JUL 2004 | AUG 2004 | SEP 2004 | OCT 2004 | NOV 2004 | DEC 2004 | JAN 2005 | FEB 2005 | MAR 2005 | APR 2005 | MAY 2005 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | TORRES, FILIMON | | | | | | | | | | | | 20.00 | 20.00 |
| | Total Dollars Paid | | | | | | | | | | | | 20.00 | 20.00 |

| | | JUN 2004 | JUL 2004 | AUG 2004 | SEP 2004 | OCT 2004 | NOV 2004 | DEC 2004 | JAN 2005 | FEB 2005 | MAR 2005 | APR 2005 | MAY 2005 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dues 1.7500% | | | | | | | | | | | | | | .35 | .35 |
| Total | | | | | | | | | | | | | | .35 | .36 |

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
BENSON CONSTRUCTION CO.
Case #: ChLab-1007-1519
Contract: CCA & *CCA          Year Ended: May, 2006

Levinson Simon & Sprung, P.C.
Detail Report
Report Date: 11/28/2007

Contributions computed by Amount per Hour

Page 4
Employees

| SSN | Name | JUN 2005 | JUL 2005 | AUG 2005 | SEP 2005 | OCT 2005 | NOV 2005 | DEC 2005 | JAN 2006 | FEB 2006 | MAR 2006 | APR 2006 | MAY 2006 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | CONTRERAS, EDU | | | | | | | | | | | | | |
| 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 | MIRAMONTES, OS | | | | | | | | | | | | | |
| 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 | TORRES, FILIMON | | | 1.50 | | | | 29.50 | 8.00 | | | 8.00 | | 29.50 |
| | Total Hours | | | 1.50 | | | | 29.50 | 8.00 | | | 8.00 | | 39.00 |

Rate Table

| | Rate | AUG 2005 | DEC 2005 | APR 2006 | Total |
|---|---|---|---|---|---|
| Welfare Fund | $6.6600 | 10.29 | 202.37 | 54.88 | 267.54 |
| Pension Fund | $3.9400 | 5.91 | 116.23 | 31.52 | 153.66 |
| Training Fund | $0.7700 | .26 | 6.02 | 1.36 | 8.63 |
| JAF | $0.0700 | .11 | 2.07 | .56 | 2.73 |
| LDCI.MCC | $0.1200 | .18 | 3.54 | .96 | 4.68 |
| LECET | $0.0600 | .09 | 1.77 | .48 | 2.34 |
| Total | | 16.83 | 330.99 | 89.76 | 437.58 |

Fax from : 17089477295    LABORS FIELD DEPT    04-15-08 12:00p   Pg 19

**Levinson Simon & Sprung, P.C.**
**Detail Report**
**Report Date: 11/29/2007**

Page 5
Employees

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
BENSON CONSTRUCTION CO.
Case #: CNLab-1007:1519
Contract: CCA & YCCA
Year Ended: May, 2006

Contributions computed as Percentage of Dollars Paid

| SSN | Name | JUN 2005 | JUL 2005 | AUG 2005 | SEP 2005 | OCT 2005 | NOV 2005 | DEC 2005 | JAN 2006 | FEB 2006 | MAR 2006 | APR 2006 | MAY 2006 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | CONTRERAS, EDU | | | | | | | 912.04 | | | | | | 912.04 |
| | Total Dollars Paid | | | | | | | 912.04 | | | | | | 912.04 |

| | | JUN 2005 | JUL 2005 | AUG 2005 | SEP 2005 | OCT 2005 | NOV 2005 | DEC 2005 | JAN 2006 | FEB 2006 | MAR 2006 | APR 2006 | MAY 2006 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dues | 1.7500% | | | | | | | 15.96 | | | | | | 15.96 |
| Total | | | | | | | | 15.96 | | | | | | 15.96 |

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
BENSON CONSTRUCTION CO.
Case #: Chlab-1007-1519
Contract: CCA & YCA

Year Ended: May, 2007

**Levinson Simon & Sprung, P.C.**
Detail Report
Report Date: 11/29/2007

Page 8
Employees

Contributions computed by Amount per Hour

| SSN | Name | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | Total |
|-----|------|----------|----------|----------|----------|----------|----------|----------|----------|----------|----------|----------|----------|-------|
| 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 | LARA, PASCUAL | | | | | | | | | | | | | |
| | Total Hours | | | | | | 2.00 | | | | | | | 2.00 |

## Rate Table

| | | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | Total |
|--|--|----------|----------|----------|----------|----------|----------|----------|----------|----------|----------|----------|----------|-------|
| Welfare Fund | $7.4600 | | | | | | 14.92 | | | | | | | 14.92 |
| Pension Fund | $4.8400 | | | | | | 9.68 | | | | | | | 9.68 |
| Training Fund | $0.1700 | | | | | | .34 | | | | | | | .34 |
| IAF | $0.0700 | | | | | | .14 | | | | | | | .14 |
| LDCLMCC | $0.1200 | | | | | | .24 | | | | | | | .24 |
| LECET | $0.0600 | | | | | | .12 | | | | | | | .12 |
| Total | | | | | | | 25.44 | | | | | | | 25.44 |

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
BENSON CONSTRUCTION CO.
Case #: CHLab-1007-1519
Contract: CCA & *CCA

Year Ended: May, 2007

Levinson Simon & Sprung, P.C.
Detail Report
Report Date: 11/29/2007

Page 7
Employees

Contributions computed as Percentage of Dollars Paid

| SSN | Name | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | CONTRERAS, EDU | | | | | | 6.00 | | | | | | | 6.00 |
| 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 | KOPPER, THOMAS | | | | | | 386.49 | | | | | | | 386.49 |
| | Total Dollars Paid | | | | | | 392.49 | | | | | | | 392.49 |

| | | JUN 2006 | JUL 2006 | AUG 2006 | SEP 2006 | OCT 2006 | NOV 2006 | DEC 2006 | JAN 2007 | FEB 2007 | MAR 2007 | APR 2007 | MAY 2007 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dues | 1.7500% | | | | | | | | | | | | | |
| Total | | | | | | | 6.87 | | | | | | | 6.87 |
| Total | | | | | | | 6.87 | | | | | | | 6.87 |

Levinson Simon & Sprung, P.C.
Detail Report
Report Date: 11/29/2007

Page 8
Employees

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
BENSON CONSTRUCTION CO
Case #: ChLab-1007-1519
Contract: CCA & *CCA          Year Ended: May, 2008

Contributions computed by Amount per Hour

| SSN | Name | JUN 2007 | JUL 2007 | AUG 2007 | SEP 2007 | OCT 2007 | NOV 2007 | DEC 2007 | JAN 2008 | FEB 2008 | MAR 2008 | APR 2008 | MAY 2008 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | DELACRUZ, ALFRE | | | | | 152.00 | | | | | | | | 152.00 |
| 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 | DELACRUZ, JOSE | | | | | 152.00 | | | | | | | | 152.00 |
| 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 | GONZALEZ, JESUS | | | | | 160.00 | | | | | | | | 160.00 |
| 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 | KOPPER, THOMAS | | | | | 160.00 | | | | | | | | 160.00 |
| 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 | LARA, PASCUAL | | | | | 160.00 | | | | | | | | 160.00 |
| 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 | SCHLOTMAN, DANI | | | | | 160.00 | | | | | | | | 160.00 |
| | Total Hours | | | | | 944.00 | | | | | | | | 944.00 |

| Rate Table | | JUN 2007 | JUL 2007 | AUG 2007 | SEP 2007 | OCT 2007 | NOV 2007 | DEC 2007 | JAN 2008 | FEB 2008 | MAR 2008 | APR 2008 | MAY 2008 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare Fund | $7.9700 | | | | | 7,523.68 | | | | | | | | 7,523.68 |
| Pension Fund | $5.6800 | | | | | 5,361.92 | | | | | | | | 5,361.92 |
| Training Fund | $0.2200 | | | | | 207.68 | | | | | | | | 207.68 |
| IAF | $0.0700 | | | | | 66.08 | | | | | | | | 66.08 |
| LDCLMCC | $0.1200 | | | | | 113.28 | | | | | | | | 113.28 |
| LECET | $0.0600 | | | | | 56.64 | | | | | | | | 56.64 |
| Total | | | | | | 13,329.28 | | | | | | | | 13,329.28 |

Levinson Simon & Sprung, P.C.
Detail Report
Report Date: 11/29/2007

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
BENSON CONSTRUCTION CO.
Case #: ChLbD-1007-1519
Contract: CCA & *CCA

Year Ended: May, 2008

Contributions computed as Percentage of Dollars Paid

| SSN | Name | JUN 2007 | JUL 2007 | AUG 2007 | SEP 2007 | OCT 2007 | NOV 2007 | DEC 2007 | JAN 2008 | FEB 2008 | MAR 2008 | APR 2008 | MAY 2008 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | DELACRUZ, ALFRE | | | | | 5,038.80 | | | | | | | | 5,038.80 |
| 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 | DELACRUZ, JOSE | | | | | 5,038.80 | | | | | | | | 5,038.80 |
| 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 | GONZALEZ, JESUS | | | | | 5,304.00 | | | | | | | | 5,304.00 |
| 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 | KOPPER, THOMAS | | | | | 5,304.00 | | | | | | | | 5,304.00 |
| 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 | LARA, PASCUAL | | | | | 5,843.20 | | | | | | | | 5,843.20 |
| 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 | SCHLOTMAN, DANI | | | | | 5,843.20 | | | | | | | | 5,843.20 |
| | Total Dollars Paid | | | | | 31,632.80 | | | | | | | | 31,632.80 |
| | | | | | | 2.7500% | | | | | | | | |
| | | | | | | 875.40 | | | | | | | | 875.40 |
| | Total | | | | | 876.40 | | | | | | | | 876.40 |

Fax from : 17089477295          LABORS FIELD DEPT          04 15 08 12:33p     Pg 25

**Levinson Simon & Sprung, P.C.**
Reconciliation of Differences Per Year

**PENSION AND WELFARE FUNDS OF CHICAGO LABORERS**
**BENSON CONSTRUCTION CO.**
Case #: ChLab-1007-1519
Audit Period: 5/1/2005 thru 10/31/2007
Fiscal Year End: May

LDCLMCC, LECET AND CCA ONLY

| Fiscal Year Ending | MAY 2005 | Total |
|---|---|---|
| Hours Not Reported | 3.00 | 3.00 |
| Dollar Amount Due | | |
| IAF | 0.21 | 0.21 |
| LDCLMCC | 0.36 | 0.36 |
| LECET | 0.18 | 0.18 |
| Total | 0.75 | 0.75 |

| Total Amount Due | 0.75 |
|---|---|

Manager: Betar, Leia
Auditor: Uzzen, Suzanne

PENSION AND WELFARE FUNDS OF CHICAGO LABORERS
BENSON CONSTRUCTION CO.

Case #: CNLab-1007-1519
Contract: CCA & *CCA

Year Ended: May, 2005

Levinson Simon & Sprung, P.C.
Detail Report
Report Date: 11/29/2007

Contributions computed by Amount per Hour

Page 11

Other/Unknown

| SSN | Name | JUN 2004 | JUL 2004 | AUG 2004 | SEP 2004 | OCT 2004 | NOV 2004 | DEC 2004 | JAN 2005 | FEB 2005 | MAR 2005 | APR 2005 | MAY 2005 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 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 | MIRAMONTES, OS | | | | | | | | | | | | 3.00 | 3.00 |
| | Total Hours | | | | | | | | | | | | 3.00 | 3.00 |

Rate Table

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PNF | $0.0700 | | | | | | | | | | | | .21 | .21 |
| LDCLMCC | $0.1200 | | | | | | | | | | | | .36 | .36 |
| LECET | $0.0600 | | | | | | | | | | | | .18 | .18 |
| Total | | | | | | | | | | | | | .75 | .75 |

**Levinson Simon & Sprung P.C.**
**Payroll Audit Information Sheet**

Page 1

| | | | |
|---|---|---|---|
| EMPLOYER'S NAME | Benson Construction Co. | EMPLOYER # | 10387 |
| ADDRESS | 3128 N Schoenbeck Rd. | PHONE # | 847-541-9880 |
| CITY STATE ZIP | Arlington Heights, IL 60004 | FAX # | 847-541-9889 |
| EMAIL ADDRESS | dabergand4@aol.com | FEIN | 36-2600877 |
| DATE OF CONTRACT | | AUDIT PERIOD | 5/1/05-10/31/07 |
| CONTACT'S NAME | Mark Berglund | TITLE | President |
| PERSON FUND IS TO CONTACT | Diana Kopper | TITLE | Secretary |
| ENTITY TYPE | Corporation | # OF EMPLOYEES | 7 current / 37 during audit period |
| | | AVE # PER MONTH | 8 |

BUSINESS ACTIVITY     Concrete

| | | | |
|---|---|---|---|
| Mark Berglund | President | | 3128 N Schoenbeck Rd, Arlington Heights, IL 60004 |
| Geilak Berglund | Corporate Secretary | | Same as above |
| | | | |
| | | | |

BANKING FACILITIES USED AND ACCOUNT NUMBER     Village Bank & Trust     |     0010000784

IS EMPLOYER STILL IN BUSINESS?     ☒ YES     ☐ NO

DOES EMPLOYER HAVE INTEREST IN ANY OTHER COMPANY?     ☐ YES     ☒ NO

IF YES, LIST NAMES OF SAME

IS EMPLOYER A MEMBER OF ANY TRADE ORGANIZATION/ASSOCIATION?     ☒ YES     ☐ NO

IF YES, LIST NAMES OF SAME

CCA

INFORMATION PROVIDED BY:

Diana Kopper

TITLE:

Secretary

**Levinson Simon & Sprung P.C.**
**Payroll Audit Information Sheet**

Page 2

AUDIT DATE    | 11/28/07 |

AUDIT SITE (IF DIFFERENT FROM EMPLOYER'S ADDRESS | Same |

ALL REQUIRED ACCOUNTING RECORDS WERE AVAILABLE WITH THE EXCEPTION OF

BRIEFLY DESCRIBE THE NATURE OF THE DELINQUENCY, IF ANY
| Underreported hours and wages; clerical errors |

DID YOUR EXAMINATION UNCOVER ANYTHING SPECIAL OR UNUSUAL WHICH SHOULD BE BROUGHT TO THE ATTENTION OF THE FUND COUNSEL OR OTHER INTERESTED PERSONS?    ☐ YES    ☒ NO

IF YES, EXPLAIN

AUDITOR | Suzanne Uczen |

# EMPLOYER'S BOND

*KNOW ALL PEOPLE BY THESE PRESENTS, that we* BENSON CONSTRUCTION

COMPANY
(name of employer)

a CORPORATION
(indicate corporation, partnership, or sole proprietor)

of ARLINGTON HEIGHTS
(city)

*, Illinois, herein called the "Principal", and*

WEST BEND MUTUAL INSURANCE COMPANY *herein called the "Surety", are hereby held and*
(name of bonding company)

*firmly bound unto the various fringe benefit and industry funds identified in the collective bargaining*

*agreement between the Construction and General Laborers District Council of Chicago and Vicinity,*

*affiliated with the Laborers' International Union of North America (the "Union") and the Principal*

*and any successor collective bargaining agreements, all of which funds are collectively referred to as*

*the "Funds"; unto the Union; and unto all individuals employed by the Principal and represented for*

*collective bargaining purposes by the Union, referred to as the "Union Employees" (the Funds, the*

*Union, and the Union Employees are collectively referred to as the "Obligees") in the penal sum of*

TEN THOUSAND
(amount written out)
*Dollars ($* 10,000.00 *), for the*
(amount)

*obligations and undertakings hereinafter set forth, the payment of which, well and truly to be made,*

*we hereby jointly and severally bind ourselves, our successors, assigns, heirs, executors, and*

*administrators.*

*Signed and sealed and dated on this* 20th *day of* March 2002

*Whereas, the above named Principal is employing or proposes to employ employees in a*

*bargaining unit represented by the Union for the purpose of performing certain work as defined in a*

*collective bargaining agreement between the Principal and the Union;*

*NOW, THEREFORE, the conditions of this bond are such that if the Principal shall well and faithfully pay the wages due the Union Employees with respect to the work performed by the Union Employees, the contributions due to the Funds, the dues due to the Union, any interest, liquidated damages, attorneys' fees and/or costs that may become due, and such other amounts as the Principal may be required to pay to the Obligees, or to any of them, pursuant to the collective bargaining agreement between the Principal and the Union or pursuant to the rules and regulations of any or all Funds, then this obligation shall be void; otherwise it shall remain in full force and effect. This obligation of the Principal and Surety shall be joint and several.*

*If Surety is required to make payments to the Obligees pursuant to the bond, Surety shall have no claim or right of any sort against Obligees.*

*In the event that the aggregate amount due the Obligees shall exceed the amount of this bond, then the claims of the various Obligees shall be satisfied on a pro rata basis, proportionate to the amount of each Obligee's claim. Any disputes as to the proper distribution in such circumstances, and any disputes regarding the Principal's obligation to the Obligees, shall be resolved in accord with the dispute resolution mechanisms of the collective bargaining agreement between the Principal and the Union.*

*The Surety shall pay any claim made by the Obligees under this bond within 30 days from receipt of the claim. Should the Surety fail to issue payment within 30 days from receipt of a claim, the Surety shall be liable for the claimed amount and any reasonable attorneys' fees and costs incurred by Obligees in enforcing this bond.*

*This Bond may be canceled by the Surety 120 days after receipt by the Obligees of the Surety's written notice of cancellation by registered or certified mail.*

**PRINCIPAL**                                             **SURETY**

BENSON CONSTRUCTION COMPANY                WEST BEND MUTUAL INSURANCE COMPANY

By: _____                                     By: LUKE F. PRAXMARER
Agent                                                              Attorney-In-Fact

*A Power of Attorney and Notarial Acknowledgment must be submitted with this bond.*

## GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of _March 10, 2008_ by the undersigned, _Mike W. Byford_, (the "Guarantor"), to and for the benefit of the LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (collectively, the "Funds").

WHEREAS, Benson Construction (the "Company") has agreed to pay a total of $34,954.51 to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the guarantor executes this Guaranty; and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note;

NOW WHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. **Guaranty of Payment and Indemnification.** The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the six (6) month payment period including interest and liquidated damages for late or unpaid payments due on the note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgement bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all monthly benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

2. **Continuing Guaranty.** This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the party of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. **Waivers.** Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing which might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

4. **Subrogation.** Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the guarantor expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note.

1



EXHIBIT

D

The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other period (including and surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. Independent Obligations. The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds form suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. Acceleration. In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. Effect of Bankruptcy. This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. Termination. This Guaranty shall remain in full force and effect as to the Guarantor until all of the Companys' Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations form time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. The Company's Financial Condition. The guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. Expenses. The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. Delay, Cumulative Remedies. No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. Binding Effect. This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

13. Default. The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any

2

such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. <u>Warranties</u>. Guarantor makes to the Funds the following representations and warranties:

(a) <u>Authorization</u>. Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

(b) <u>No Conflict</u>. The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) <u>Litigation.</u> There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality which involve any of the transactions herein contemplated, or the possibility of any judgement or liability which may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) <u>Enforceability</u>. This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. <u>Notices</u>. All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in period, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantor

Mark W Berglund
3128 N Schoenbeck
Arlington Hts IL
60004

In Case of the Funds:

Collection Counsel
Pat Wallace
Laborers Pension & Welfare Fund
Sub Office
53 W Jackson Blvd
Suite 660
Chicago IL 60604-3607

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor's attorney, _____. But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

16. <u>Additional Waivers</u>. Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

3

17. **Severability.** If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. **Applicable Law; Venue.** This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and enter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue or any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. **Time is of the Essence.** Time is of the essence of this Guaranty as to the performance of the undersigned.

20. **Death of a Guarantor.** In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the three undersigned Guarantors has executed this instrument as of the date and year first above written.

_Mark W Byford_      _____      _____

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      _____      _____
Social Security Number

Date: 3-10-2008      _____      _____

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR;

_____

Dated: _____

4